**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Civil Case No.:

| | |
|---|---|
| MICHAEL LABOON, as an individual and on behalf of all others similarly situated, | : : : |
| *Plaintiff,* | : : |
| *vs.* | : : |
| UNILEVER UNITED STATES, INC., a Delaware corporation, and PEPSICO, INC., a North Carolina corporation, | : : : : |
| *Defendants.* | : : |

**CLASS ACTION COMPLAINT**

Plaintiff, Michael Laboon, individually, and on behalf of all others similarly situated, by and through his undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendants, UNILEVER UNITED STATES, INC., ("Unilever") and PEPSICO, INC., ("PepsiCo"), (collectively referred herein as "Defendants"), as follows:

**I. INTRODUCTION**

1.     At all material times hereto, Defendants have unlawfully, negligently, unfairly, misleadingly, and deceptively represented that its Pure Leaf Iced Tea, sold in a variety of flavors, is "All Natural," despite containing unnatural ingredients, which are synthetic, artificial, and/or genetically modified, including but not limited to Citric Acid and/or "Natural Flavor."

2.     The specific flavor varieties of Defendants' Pure Leaf Iced Tea purchased by the Plaintiff, Michael Laboon, and which are the subject of the above-captioned case, are listed as follows:

1) <u>Sweet</u>

    i.  Contains Citric Acid;

2) <u>Extra Sweet</u>

    i.  Contains Citric Acid;

3) <u>Lemon</u>

    i.  Contains Citric Acid and Natural Flavor;

4) <u>Unsweetened Tea</u>

    i.  Contains Citric Acid;

(Referred to individually as "the Product" and collectively as "The Products").  *See* **Composite Exhibit 1**, attached hereto and incorporated herein, *True and Correct Replication of the Labeling of the Products*.

    3.     The Products are not "natural" and certainly not "All Natural," because they contain synthetic, artificial, and/or genetically modified ingredients.

    4.     At all times material hereto, Defendants manufactured, marketed, advertised, and sold the Products as being "All Natural" on the front labeling of the Products.  The Products made the exact same, uniformly "All Natural" claims prominently displayed location on the front labeling of each and every one of the Products.

    5.     The representation that the Products are "All Natural" is central to Defendants' marketing of the Products.  The misrepresentations were uniform and were communicated to Plaintiff and every other member of the Class in the substantially similar manner, if not the exact same manner.

    6.     Unfortunately for consumers, the "All Natural" claim is false, misleading and likely to deceive reasonable consumers in the same respect.

7. Defendants label the Products as "All Natural" because reasonable consumers perceive all natural foods as healthier, better, and more wholesome. The market for all natural foods has grown rapidly in the past few years, a trend Defendants assumingly seek to take advantage of through the subject false and misleading advertising.

8. Through this deceptive practice, Defendants were able to charge a premium price for the Products by deceiving consumers about the true attributes of the Products and distinguishing the Products from similar products that do not claim to be "All Natural." Upon information and belief, Defendants were motivated to mislead consumers for no other reason than to take away market share from competing products and/or increase their own profits. Plaintiff brings this action to stop Defendants' misleading practices alleged herein.

9. Plaintiff brings this class action to secure, among other things, equitable relief, declaratory relief, restitution, and in the alternative, damages, for a Class of similarly situated Florida purchasers, against Unilever and PepsiCo, for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; and (3) Unjust Enrichment.

10. In addition, Plaintiff is seeking an Order declaring Defendants' business practice to be in violation of FDUTPA and requiring Defendants to cease using synthetic, artificial, and/or genetically modified ingredients in its "All Natural" Products, and/or Ordering Defendants to cease from representing its Products are "All Natural" on the labeling for the Products that contain synthetic, artificial, and/or genetically modified ingredients.

11. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

12.     All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## II. JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

14.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because Plaintiff is a citizen of Florida, and Defendants Unilever and PepsiCo can be considered a citizen of the State of Delaware and the State of North Carolina, respectively, for diversity purposes.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because, Defendants conduct business in, and may be found in, this judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

## III. PARTIES

16.     Plaintiff, Michael Laboon, is an individual over the age of 18, and is a citizen of the State of Florida, resident of Broward County.

17.     Defendant, Unilever United States, Inc. ("Unilever"), is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located

at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  Unilever lists with the Delaware Secretary of State a Registered Agent as The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Unilever also lists CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324 with the Florida Department of State as a Registered Agent. Unilever can be considered a citizen of Delaware or New Jersey for diversity purposes.

18.    Defendant, PepsiCo, Inc. ("PepsiCo") is a corporation incorporated under the laws of the State of North Carolina, with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.  PepsiCo lists CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324 with the Florida Department of State as a Registered Agent. PepsiCo can be considered a citizen of North Carolina or New York for diversity purposes.

19.    During the Class Period, Defendants promoted and marketed the Products at issue in this jurisdiction and in this judicial district.  The advertising for the Products relied upon by Plaintiff was prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through advertising containing the misrepresentations alleged herein.

20.    Defendants are the owner, manufacturer and/or distributor of the Products, and are the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements for the Products.

21.    Plaintiff alleges that, at all times relevant herein, Defendants and their subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and at all times relevant herein, each was acting

within the purpose and scope of that agency and employment.

22.     Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were Defendants agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

23.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendants, in concert with their subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Defendant participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

24.     Whenever reference in this Complaint is made to any act by Defendants or their subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendants committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## IV. <u>FACTUAL ALLEGATIONS</u>

### A.  <u>Defendants' False and Misleading Advertising of the "All Natural" Product</u>

25.     Upon information and belief the Products uniformly claimed to be "All Natural," when in fact, they were not, because they contain synthetic, artificial, and/or genetically modified ingredients, including but not limited to, Citric Acid and/or "Natural Flavor," which are unnatural ingredients.

26.     Through advertising on the front labeling of the Products, Defendants made untrue and misleading material statements and representations regarding the Products, which have been relied upon by Plaintiff and members of the Class to their detriment.

27.     Defendants' "All Natural" statement prominently displayed on the front of the label for the Products' was untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class, because the Products are not "All Natural."

28.     Defendants unlawfully marketed, advertised, sold and distributed the Products to Florida purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores, as being "All Natural."

29.     Defendants' "All Natural" representations conveyed a series of express and implied claims that Defendants knew were material to the reasonable consumer, and which Defendants intended for consumers to rely upon when choosing to purchase the Products.

30.     As a result, all consumers within the Class, including Plaintiff, who purchased the Products, were exposed to the same "All Natural" claim in the same location on the labeling for the Products.

31.     Unfortunately for consumers, they were charged, and paid, a price premium for these alleged "All Natural" Products, over other Products that did not claim to be "All Natural." In addition, or as an alternative thereto, Plaintiff and members of the Class would not have purchased the Products but for the "All Natural" claim, and as a result, Plaintiff and members of the Class suffered damages in the total amount of the purchase price of the Products(s) they have purchased.

**B.  The Products are not "All Natural" Because They Contain Ingredients that are Synthetic, Artificial and/or Genetically Modified**

32.     Contrary to Defendants' representations that the Products are "All Natural," they contain ingredients, without limitation, such as Citric Acid and/or "Natural Flavor," which are unnatural due to being synthetic, artificial, and/or genetically modified.  The presence of these ingredients in the Products causes the Products to not be "All Natural."

33.     **_Citric Acid_** is made synthetically by the fermentation of glucose. The process of making this Citric Acid regularly utilizes genetically engineered sugar beets and genetically engineered maize. It increases the acidity of a microbe's environment, which makes it harder for bacteria and mold to survive and reproduce. Its main purpose is to serve as a preservative. The FDA and other federal agencies recognize it as an unnatural substance when used as a food additive. _See_ FDA Informal Warning Letter to the Hirzel Canning Company (August 29, 2001) ("the addition of calcium chloride and Citric Acid to these products preclude use of the term 'natural' to describe this product."); U.S. International Trade Commission, _Synthetic Organic Chemical Index_, USCTIC Pub. 2933, at 3-105 (Nov. 1995). Citric Acid is added to foods as a synthetic preservative, flavorant, and acidity regulator. Food Ingredients and Colors, supra. It is commonly manufactured through solvent extraction or mycological fermentation of bacteria. 21 C.F.R. § 184.1033(a).

34.     Despite these unnatural ingredients, Defendants knowingly market the Products as "All Natural."

35.     The "FDA has not developed a definition for use of the term natural or its derivatives," but it has _loosely_ defined the term "natural" as a product that "does not contain

added color, artificial flavors, or synthetic substances."[1] According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. §205.2.

36.    The FDA has not occupied the field of "natural labeling," and in any event, this case is not about labeling, it is about Defendants' voluntary and affirmative "All Natural" statement on the front labeling for the Products being false, misleading, and likely to deceive reasonable consumers.   Courts routinely decide whether "natural" statements are likely to deceive reasonable consumers.

37.    Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," defined as:

> (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.

> Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing.[2]

---

1.    *What is the Meaning of 'Natural' on the Label of Food?*, FDA, Transparency, FDA Basics, available at *http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868* (last visited April 27, 2015).

38.    Food manufacturers must comply with federal and state laws and regulations governing labeling food products. Among these are the Federal Food, Drug and Cosmetic Act (FDCA) and its labeling regulations, including those set forth in 21 C.F.R. part 101.

39.    Florida and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

40.    Plaintiff is explicitly alleging only violations of state law that is identical and/or mirrors the labeling and advertising requirements mandated by federal regulations and laws, including but not limited to, the Federal Food, Drug, and Cosmetic Act (FD&C Act), the Federal Food and Drug Association (F.D.A.), the Federal Trade Commission (F.T.C.), and the Nutrition Labeling and Education Act (N.L.E.A.).

41.    In addition to its blanket adoption of federal labeling requirements, Florida has also enacted various laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, Defendants' Product label is misleading and deceptive pursuant to Florida's Food Safety Act, FLA. STAT. §§ 500.01, *et seq.*—identical in all material aspects hereto—to the Food and Drug Administration's ("FDA") Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 343, 343-1. Plaintiff's claim does not seek to contest or enforce anything in Florida's Food Safety Act that is beyond the FFDCA or FDA regulation requirements.

42.    For example, the Florida Food Safety Act, Fla. Stat. § 500.01, states:

_____

2.    *Food Standards and Labeling Policy Book*, USDA, 2005, available at *http://www.fsis.usda.gov/oppde/larc/policies/labeling_policy_book_082005.pdf* (last visited April 27, 2015).

Purpose of chapter.—This chapter is intended to:

(1) Safeguard the public health and promote the public welfare by protecting the consuming public from injury by product use and the purchasing public from injury by merchandising deceit, flowing from intrastate commerce in food;
(2) Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the Federal Food, Drug, and Cosmetic Act; the Agriculture Marketing Act of 1946; and likewise uniform with the Federal Trade Commission Act, to the extent that it expressly prohibits the false advertisement of food; and

(3) Promote thereby uniformity of such state and federal laws and their administration and enforcement throughout the United States and in the several states.

Fla. Stat. § 500.02(1)–(3).

43.     In Florida, "A food is deemed to be misbranded: If its labeling is false or misleading in any particular." Fla. Stat. § 500.11(1)(a).

44.     Like Plaintiff's state law claims, under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it fails to contain certain information on its label or its labeling.  21 U.S.C. § 343(a).

45.     Furthermore, "Plaintiff's state consumer protection law claims are not preempted by federal regulations." *Krzykwa v. Campbell Soup Co.*, Case No. 12-62058-CIV-DIMITROULEAS, *6 (S.D. Fla., May 28, 2013) (DE 37)**.** (citing *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012). Additionally, the primary jurisdiction doctrine does not apply "because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'" *Id*. at p. 8.

**C.  Defendants Deceptively Market the Products as "All Natural" to Induce Consumers to Purchase the Products**

46.     Despite the unnatural ingredients contained in the Products, Defendants

knowingly market the Products as "All Natural" and fail to disclose material information about the Product; the fact it contains synthetic, artificial, and/or genetically modified ingredients. This non-disclosure, while at the same type branding the Products "All Natural," is deceptive and likely to mislead a reasonable consumer.

47.    A representation that a product is "All Natural" is material to a reasonable consumer. According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[3]

48.    Defendants market and advertise the Products as "All Natural" to increase sales of the Products and Defendants are well aware that claims of food being "All Natural" are material to consumers. Despite knowing that not all of the ingredients are "All Natural," Defendants have engaged in a widespread marketing and advertising campaign to portray the Products as being "All Natural."

49.    Defendants engaged in misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products.

50.    Reasonable consumers frequently rely on food label representations and information in making purchase decisions.

51.    Plaintiff and the other Class members reasonably relied to their detriment on Defendants' misleading representations and omissions. Defendants' misleading affirmative

---

3.    Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf (last visited April 27, 2015).

statements about the "naturalness" of its Products obscured the material facts that Defendants failed to disclose about the unnaturalness of its Products.

52.     Plaintiff and the other Class members were among the intended recipients of Defendants' deceptive representations and omissions.

53.     Defendants made the deceptive representations and omissions on the Products with the intent to induce Plaintiff and the other Class members' purchase of the Products.

54.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

55.     Thus, Plaintiff and the other Class members' reliance upon Defendants' misleading and deceptive representations and omissions may be presumed.

56.     The materiality of those representations and omissions also establishes causation between Defendants' conduct and the injuries sustained by Plaintiff and the Class.

57.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Class members.

58.     In making the false, misleading, and deceptive representations and omissions, Defendants knew and intended that consumers would pay a premium for "All Natural" labeled products over comparable products that are not labeled as such, furthering Defendants' private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "All Natural" by Defendants' competitors, or those that do not claim to be "All Natural."

59.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the other Class members in that they:

1)  paid a sum of money for Products that were not as represented;

2)  paid a premium price for Products that were not as represented;

3)  were deprived the benefit of the bargain because the Products they purchased were different than what Defendants warranted;

4)  were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendants;

5)  did not receive Products that measured up to their expectations as created by Defendants;

6)  ingested a substance that was other than what was represented by Defendants;

7)  ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

8)  ingested a product that was artificial, synthetic, or otherwise unnatural;

9)  ingested a substance that was of a lower quality than what Defendants promised;

10) were denied the benefit of knowing what they ingested;

11) were denied the benefit of truthful food labels;

12) were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

13) were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

14) were denied the benefit of the beneficial properties of the natural foods promised.

60.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product.

61.     Among other things, Plaintiff and the other Class members would not have been denied the benefit of the bargain, they would not have ingested a substance that they did not expect or consent to.

62.     Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions.  Plaintiff and the other Class members purchased, purchased more of, or paid more for, the Products than they would have done, had they known the truth about the Products' unnaturalness.

63.     Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

D.  Plaintiff's Purchase and Reliance on the "All Natural" Statement, Requiring Injunctive Relief

64.     Plaintiff, Michael Laboon, purchased the Products at issue in this judicial district during the Class Period (defined below), including purchases made in December of 2014 and January and February of 2015, of the Sweet, Extra Sweet, Unsweetened and Lemon flavors of "Pure Leaf Iced Tea" beverage from a Target store located in Deerfield Beach, Broward County, Florida.

65.     Plaintiff purchased the Products during the Class Period and prior to the commencement of this action.  Plaintiff relied upon the statement that the Products were "All Natural" in deciding to purchase the Products.  Had Plaintiff known at the time that the Products were not, in fact, "All Natural," but instead contains synthetic, artificial, and/or genetically modified ingredients, he would not have purchased the Products at all.

66.     The Products purchased by Plaintiff claimed to be "All Natural" on the front labeling, which Plaintiff perceived, read, and relied on in making his decision to purchase the Products.  Plaintiff interpreted the "All Natural" claim to mean that the Products did not contain any synthetic, artificial, and/or genetically modified ingredients.

67.     Subsequent to purchasing the Product, Plaintiff discovered that the Products contain synthetic, artificial, and/or genetically modified ingredients, including Citric Acid and/or "Natural Flavor."

68.     Defendants manufactured, marketed, advertised, distributed and sold the Products unlawfully claiming to be "All Natural" in retail stores throughout the State of Florida and in this judicial district.

69.     Plaintiff and members of the Class would not have purchased the Products had they known that they were not "All Natural" and contain synthetic and/or artificial ingredients.

70.     Defendants' "All Natural" statement related to the Products is material to a consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether products contain synthetic, artificial, and/or genetically modified ingredients, and thus attach importance to an "All Natural" claim when making a purchasing decision.

71.     Plaintiff and the proposed Class, all reasonable consumers, do not expect a Product that claims to be "All Natural" to contain non-natural, highly processed ingredients, nor did they expect the Product's to be unlawfully misbranded.

72.     Plaintiff would not have purchased the Product if he had known the "All Natural" claim was false.  Plaintiff would purchase the Product again if it were not misbranded. However, if Plaintiff and the Class purchase the Product again in its presently labeled condition, they will

reencounter and repurchase a Product that is not what it is represented to be. Thus, Defendants' deceptive and unfair conduct has deterred Plaintiff from purchasing the mislabeled Products.

73.     Plaintiff and proposed Class face a real and immediate threat of future harm in the form of deceptively labeled and marketed Products sold at inflated prices based upon the deception that the Products are "All Natural," when they are not. Absent an injunctive order, Plaintiff and the Class cannot rely on Defendants' Products to be truthful and non-misleading, and the Product will continue to be sold at an artificially inflated price beyond its true market value.

74.     Defendants' on-going wrongful conduct and practices, if not enjoined, will subject Plaintiff, Class members and other members of the public to substantial continuing harm and will cause irreparable injury to the public.  Absent the injunctive power of this Court, Defendants will be permitted to continue to deceive and mislead members of the Class and consuming public at large.

### E. Plaintiff Has Suffered Economic Damages

75.     As a result of purchasing the Products that claim to be "All Natural," but contain synthetic, artificial, and/or genetically modified ingredients, Plaintiff and members of the Class have suffered economic damages.

76.     Defendants' "All Natural" advertising for the Products was and is false, misleading, and/or likely to deceive reasonable consumers. Therefore, the Products are misbranded and valueless, worth less than what Plaintiff and members of the Class paid for them, and/or are not what Plaintiff and members of the Class reasonably intended to receive.

77.     Because the Products are unlawfully misbranded, and there is no market value for an unlawful product, Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Products during the Class Period and injunctive relief described below.

78.     Moreover, and in the alternative, Plaintiff and members of the Class paid a price premium for the so-called "All Natural" Products, over other similar products that do not claim to be "All Natural." As a result, Plaintiff and the Class is entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Products without the false "All Natural" representations.

## V. CLASS ACTION ALLEGATIONS

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

80.     This action is maintainable as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

81.     Pursuant to Federal Rule of Civil Procedure 23(a) and b(2)-(3), Plaintiff brings this class action on behalf of himself, and on behalf of similarly situated purchasers, and seeks certification of the claims and issues in this action on behalf of a Class defined as follows:

> all persons who purchased the Products within the
> State of Florida, for personal use and not resale,
> during the time-period extending from April 29,
> 2011 to the present.

82.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

83.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff

84.     All members of the Class were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

Numerosity—Federal Rule of Civil Procedure 23(a)(1)

85.     Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impractical, if not impossible. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)

86.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including, *inter alia*:

87.     Whether Defendants' business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

88.     Whether the Products are "All Natural;"

89.     Whether the ingredients contained in the Products are "All Natural;"

90.     Whether the ingredients contained in the Products are unnatural;

91.     Whether the ingredients contained in the Products are synthetic;

92.     Whether the ingredients contained in the Products are artificial;

93.     Whether the claim "All Natural" on the Products' labeling is material to a reasonable consumer;

94.     Whether the claim "All Natural" on the Products' labeling and advertising is likely to deceive a reasonable consumer;

95.     Whether the claim "All Natural" on the Products' labeling and advertising is misleading to a reasonable consumer;

96.     Whether a reasonable consumer is likely to be deceived by a claim that products are "All Natural" when the products contain synthetic, artificial, and/or genetically modified ingredients;

97.     Whether Defendants were unjustly enriched by the sale of the Products; and

98.     Whether Defendants' conduct as set forth above injured consumers and if so, the extent of the injury.

Typicality—Federal Rule of Civil Procedure 23(a)(3)

99.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class is common to the members of each. Further, there are no defenses available to Defendants that are unique to Plaintiff.

Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)

100.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class.

101.    Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the Class' interests.  Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

102.    Certification also is appropriate because Defendants acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

103.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

104.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

105.    Certification of this class action is appropriate under Rule 23, *Federal Rule of Civil Procedure*, because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members.   This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## VI. FIRST CAUSE OF ACTION:
## FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs one (1) through one-hundred and five (105) of this Complaint as if fully set forth herein verbatim.

107.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

108.    The sale of the Products at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

109.    Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. Defendants' Products are a "good" within the meaning of the Act.  Defendants are engaged in trade or commerce within the meaning of the Act.

110.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

111.    Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

112.    Defendants have violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.  Specifically, Defendants have represented that the Products are "All Natural," when in fact the Products contain synthetic, artificial, and/or genetically modified ingredients.

113.    Plaintiff and Class Members have been aggrieved by Defendants' unfair and deceptive practices in that they purchased and consumed Defendants' Products.

114.    Reasonable consumers rely on Defendants to honestly represent the true nature of their ingredients.

115.    As described in detail above, Defendants have represented that the Products are "All Natural," when in fact they contain synthetic, artificial, and/or genetically modified ingredients.

116.    Defendants have deceived reasonable consumers, like Plaintiff and the Class, into believing its Products were something they were not—"All Natural."

117.     The knowledge required to discern the true nature of Defendants' Products is beyond that of the reasonable consumer—namely that the Products contain synthetic, artificial, and/or genetically modified ingredients. Defendants' "All Natural" statement leads reasonable consumers to believe that all of the ingredients in the Products are natural, when they are not.

118.     Federal and State Courts decide omission and misrepresentation matters regularly, including those involving a reasonable consumer's understanding of the meaning of "All Natural.' Accordingly, the issue of whether the "All Natural" label is misleading to a reasonable consumer is well within the jurisdiction of the Court.

119.     The damages suffered by the Plaintiff and the Class was directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as described above.

120.     Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendants, and for restitution and disgorgement.

121.     Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for damages, attorney's fees and costs.

## VII. SECOND CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION

122.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs one (1) through one-hundred and five (105) of this Complaint as if fully set forth herein verbatim.

123.     Defendants have negligently represented that the Products are all "All Natural," when in fact, they are not because they contain synthetic, artificial, and/or genetically modified ingredients.

124.     Defendants have misrepresented a material fact to the public, including Plaintiff and Class Members, about the Products; specifically, that the Products are "All Natural" when they contain synthetic, artificial, and/or genetically modified ingredients.

125.     Defendants knew or should have known that these omissions would materially affect Plaintiff's and Class members' decisions to purchase the Products.

126.     Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendants' representations set forth herein, and, in reliance thereon, purchased the Products.

127.     The reliance by Plaintiff and Class members was reasonable and justified in that Defendants appeared to be, and represented that they are, reputable businesses.

128.     Plaintiff would not have been willing to pay for Defendants' Products if he knew that they contained synthetic, artificial, and/or genetically modified ingredients.

129.     As a direct and proximate result of these misrepresentations, Plaintiff and members of the Class were induced to purchase and consume Defendants' Products, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought Products that were not what they were represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

**VIII. THIRD CAUSE OF ACTION:**
**UNJUST ENRICHMENT**

130.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs one (1) through one-hundred and five (105) of this Complaint as if fully set forth herein verbatim.

131.    In its marketing and advertising, Defendants have made false and misleading statements and/or omissions regarding the Products; specifically, Defendants have represented that the Products are "All Natural," when in fact, the Products contain synthetic, artificial, and/or genetically modified ingredients.

132.    The Products are marketed directly to consumers by Defendants, come in sealed bottles, and do not change from the time they leave Defendants' possession until they arrive in stores to be sold to consumers.

133.    Plaintiff and Class Members conferred a benefit on Defendants by purchasing the Products.  Defendants accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Products to Plaintiff and other Class members.

134.    Defendants profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendants to be permitted to retain said benefit.

135.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' actions.  Defendants are aware that the claims and/or omissions that they make about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

136.    Plaintiff and the Class members do not have an adequate remedy at law against Defendants (in the alternative to the other causes of action alleged herein).

137.    Accordingly, the Products are valueless such that Plaintiff and the Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiff and the Class members during the Class Period.

138.    Plaintiff and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendants derived from the sale of the Products.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.    For an award of declaratory and equitable relief as follows:

(a)    Declaring Defendants' conduct to be in violation of FDUTPA and enjoining Defendants from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Products for the purpose of selling the Products in such manner as set forth in detail above or making any claims found to violate FDUTPA or the other causes of action as set forth above;

(b)    Requiring Defendants to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

(c)    Restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive act or practices; and

      (d)     Requiring Defendants to disgorge all ill-gotten gains flowing from the conduct described herein.

3.     For actual damages in an amount to be determined at trial for all causes of action;

4.     For an award of attorney's fees and costs;

5.     For any other relief the Court might deem just, appropriate, or proper; and

6.     For pre- and post-judgment interest on any amounts awarded.

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: April 29, 2015

*/s/  Michael J. Pascucci*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:    (954) 889-3359
Fax:   (954) 889-5913
Mpascucci@ELPLawyers.com
JEggnatz@ELPLawyers.com

Amy E. Ridge
Fla. Bar. No.: 73143
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
580 California Street, Suite 1200
San Francisco, California  94104
Telephone:   (415) 324-8620
Facsimile:   (415) 520-2262
aridge@ELPlawyers.com

*Attorneys for Plaintiff Michael Laboon
and the Proposed Class*